Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| SHAWN SIMS,<br><br>        Plaintiff,<br><br>  vs.<br><br>ZACHARY YOUNG, an Ogden City Police Officer; JOHN DOE OFFICERS 1 - 3, Ogden City Police Officers; OGDEN CITY, by and through OGDEN CITY POLICE DEPARTMENT (OPD),<br><br>        Defendants. | **COMPLAINT**<br><br>**&**<br><br>**Jury Demand**<br><br><br>Civil No. _____<br><br>Judge _____ |

Shawn Sims, through counsel, complains against Defendants as follows:

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Shawn Sims seeks relief for excessive force used by Defendants in violation of his rights guaranteed under the United States Constitution, specifically the Fourth Amendment, as well as the Civil Rights Act of 1871, codified as 42 U.S.C. §1983 and

§1988, and by the laws and the Constitution of the State of Utah. Sims seeks compensatory and punitive damages; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and any further relief as this Court deems just or equitable.

## JURISDICTION AND VENUE

1.     This action arises under the United States Constitution, particularly under the provisions of the Fourth Amendment to the Constitution of the United States, as well as federal laws 42 U.S.C. §§1983 and 1988.

2.     This action seeks redress for violations of the civil rights laws of the United States due to excessive force, and jurisdiction is therefore invoked pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

3.     The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Northern Division. Venue is therefore proper under 28 U.S.C. §1391.

4.     Plaintiff also seeks redress for violations of his rights secured by the Utah Constitution. This Court has supplemental jurisdiction over such claims under Article I §§7 and 9 of the Utah Constitution.

5.     Plaintiff is seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

6.     This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. §1988, and pursuant to the Court's inherent power under State law.

7.    This Court therefore has jurisdiction for trial of the above captioned matter.

## PARTIES

8.    Plaintiff **Shawn Sims** is a citizen of the United States of America and is a resident of Weber County, State of Utah.

9.    Defendant **Zachary Young**, was, at all relevant times herein, an Officer with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of his employment, and under the color of the laws of the State of Utah.

10.    Defendants **John Does Officers 1 – 3** were, at all relevant times herein, Officers with the Ogden City Police Department, a department of Ogden City, operating in the course and scope of their employment, and under the color of the laws of the State of Utah. Once the identity of these three Officers is known, Plaintiff will amend this Complaint to accurately reflect the names of these three Defendants.

11.    Defendant **Ogden City** is a political subdivision of the State of Utah. Ogden City has a law enforcement branch known as the Ogden City Police Department ("OPD") which is authorized to operate by Ogden City and the State of Utah. Ogden City funds and supervises the OPD and is legally responsible for the acts of its employee officers that are within the course and scope of their Employment. Ogden City, through the actions of OPD Officers Young and John Does Officers 1 – 3, is a "person" within the meaning of 42 U.S.C. §1983. Officers Young and John Does Officers 1 - 3 were at all times state actors.

## FACTUAL ALLEGATIONS

12.     The incident in question occurred in the early evening of April 22, 2023, at about 6:00 p.m., in the vicinity of Washington Boulevard and 17th Street in Ogden, Utah ("Incident").

13.     The incident was filmed by a passerby and by the Officers' body cameras.

14.     Sims was 30 years old.

15.     Sims had been walking northbound on Washington Boulevard allegedly on the shoulder of the road.

16.     Sims was not threatening anyone.

17.     Sims was not acting violently in any way.

18.     Sims did not have a weapon.

19.     OPD Officer Zachary Young began following Sims in his police car with lights flashing.

20.     Sims turned to face the police car and began to back up slowly with his hands in the air in an act of submission.

21.     Young alleged that Sims was using the roadway in a prohibited fashion, at most an infraction under Utah law.

22.     Young did not know or recognize Sims.

23.     Young did not know whether Sims had any prior criminal record.

24.    As Officer Young's vehicle approached him, Sims started to walk quickly across Washington Boulevard away from Officer Young.

25.    Young immediately stopped the car, got out and pursued Sims.

26.    After a short chase, lasting only a few seconds, Sims stopped and faced Young.

27.    Sims made no verbal threats to Young.

28.    Sims did not attack Young.

29.    Sims had one empty hand up and the other hand partially in his waist band to hold up his pants.

30.    Young could tell that Sims was disoriented and potentially suffering from a mental health problem.

31.    Young aggressively moved toward Sims, grabbing at his arms and torso, and initiated a forceful takedown.

32.    As Young moved aggressively to take Sims to the ground, Sims had both of his hands out to protect himself.

33.    Doe Officer 1 assisted in the forceful takedown.

34.    Both of Sims' hands were visible and both Young and Officer 1 could easily see that Sims' hands were empty and that he had no weapon.

35.    Sims' pants were falling down.

36.    Within ten seconds of the start of the encounter, Young and Doe Officer 1 took Sims down forcefully to the concrete or pavement.

37.     The two Officers pinned Sims on his left side while Officer 1 took control of Sims' right arm and hand.

38.     Sims' left arm and hand were pinned under his body such that he could not move them.

39.     Once taken to the ground, Sims was fully detained and not fleeing, fighting or resisting.

40.     After only a few seconds, even though Sims was detained, Young and Doe Officer 1 began brutally beating Sims in the face, head, shoulders and back.

41.     The brutal beating resulted in repeatedly smashing Shawn's face into the concrete with great force.

42.     Officers later claimed falsely that Shawn was allegedly reaching in his waistband for a gun.

43.     Officer 1 had control of Sims' right arm and hand.

44.     Sims' left arm and hand were pinned between the left side of body and the road pavement.

45.     Because he was pinned, Sims could not move his left hand to reach into his waistband.

46.     Within a few seconds after the forceful takedown, Doe Officers 2 and 3 arrived on the scene and came quickly to where Young and Officer 1 were already brutally beating Sims.

47.    Almost immediately, Officer 2 joined with Officer 1 in beating Sims.

48.    They violently smashed Sims' face into the pavement while punching Sims in the face, head, shoulders and back over and over again with full-swing punches.

49.    Sims was essentially motionless while the Officers repeatedly beat him.

50.    The full weight of Young and Doe Officer 3 was on Sims pinning him to the ground, immobilizing him.

51.    As the beating continued, Sims was shrieking in agony and unable to fully communicate.

52.    Doe Officer 1 positioned his leg and knee against Sims' neck and back to immobilize him.

53.    Sims could not breathe due to pressure on his side and back.

54.    The Officers were shouting at Sims, giving confusing and conflicting commands.

55.    Officers repeatedly commanded Sims to get on his stomach.

56.    The positioning of Sims by the Officers *did not allow* for Sims to comply with all of the Officers' orders.

57.    For a period of roughly 30 seconds, Doe Officers 1 and 2 brutalized Sims by savagely beating him in the face, head and back.

58.    Sims was afraid that if he resisted or moved, the Officers would shoot him.

**59.**     Because of his fears about the Officers, Sims was forced to simply take the brutal force of the punches without saying anything or resisting.

**60.**     When Doe Officer 1 stopped beating Sims, Doe Officer 2 began beating him in the face and head and smashing his face against the pavement.

**61.**     These two Doe Officers each brutalized Sims by violently punching him between 15 and 20 times in the face and head.

**62.**     While Officers were beating the immobilized Sims, Young, without warning or justification, twice deployed his Taser to Sims' side.

**63.**     When they had tased and beaten Sims until he was nearly unconscious, Officers handcuffed him.

**64.**     The entire incident from initiating the stop, to tackling, beating and tasing Sims, to handcuffing him, took less than 45 seconds.

**65.**     Officers used this 45 seconds to escalate what was at most an incident involving a minor infraction, into a situation where they used extreme excessive and deadly force.

**66.**     Sims was taken to the emergency room by ambulance where he was told that Officers had cracked four of his ribs, fractured orbital sockets, broken his nose and broken his jaw.

**67.**     Sims also likely suffered a serious concussion.

**68.**     The emergency room also diagnosed that Sims' injuries could potentially result in the loss of vision in his right eye.

69.     After being released from the hospital, Sims was booked into Weber County Jail for an infraction and two minor misdemeanor charges.

70.     At the time, Sims was on probation for a previous charge.

71.     The four Officers knew nothing about his probation status when they initiated contact and used extreme force.

72.     The four Officers knew nothing about Sims being allegedly under the influence of a controlled substance when they initiated contact and used extreme and deadly force.

73.     The four Officers knew nothing about Sims' involvement with AP&P when they initiated contact and used extreme force.

74.     All four Officers had operating body cameras to document the incident.

75.     During the interaction with the Officers, at no time did Sims say that he wanted to commit "suicide by cop."

76.     A member of the public witnessed the incident and took video while the Officers were violently punching and beating Sims.

77.     Several eyewitnesses watched in terror as this incident unfolded.

78.     Plaintiff has requested the body camera video and all relevant police reports from Ogden City via GRAMA, but has not yet received these materials.

79.     It is illegal, unconstitutional, and otherwise improper to use force on a non-violent misdemeanant who is neither resisting nor fleeing.

80.    Young and Officer 1 saw Sims' empty hands prior to and during the forceful takedown.

81.    Shawn Sims, at all relevant times after being tackled by Officer Young, was fully subdued by the four OPD Officers.

82.    Sims was, at most, a misdemeanant initially alleged to have committed a minor pedestrian infraction and who was not resisting or fleeing.

83.    The use of force against someone like Sims in these circumstances violates the Fourth Amendment right to be free from excessive force in an arrest.

84.    The actions by Young and the three Doe Officers likewise violated Sims' due process rights under the Utah State Constitution as well as his right to be free from excessive force in an arrest.

85.    The actions of Young and the three Doe Officers were willful, malicious, and reckless, and therefore punitive damages are justified.

## FIRST CAUSE OF ACTION

### ~ *Excessive Force in Violation of the Fourth Amendment* ~

*Against Officers Zachary Young and Does 1 – 3 in their Individual Capacities.*

*Cognizable Under 42 U.S.C. §1983*

86.    Plaintiff incorporates by reference all above allegations.

87.    The proper focus in determining the reasonableness of the Officers' use of force is to analyze the events immediately confronting them when they use force.

88. Force, proportionately applied, may be justified when a suspect has committed a serious crime, is an immediate threat to officers or others, is fleeing or resisting arrest.

89. No use of force is reasonable when a suspect is fully subdued, is not resisting, is non-violent, and/or poses no threat to the officers or anyone else.

90. Furthermore, force is not permitted when there is no need to use force.

91. Sims did not commit a serious crime, but at most had committed an infraction under Utah law.

92. Sims allegedly fled from Officer Young, which at most may be a Class B misdemeanor.

93. The four OPD Officers did not know Sims or recognize him.

94. At the time force was used, the four OPD Officers did not know whether Sims had any past involvement with law enforcement.

95. Once Officer Young and Doe Officer 1 had detained Sims by tackling him and holding him to the ground, Sims was entirely subdued.

96. Once Doe Officers 2 and 3 arrived, Sims was immobilized.

97. Sims could not make any further attempt to flee and was lying on the ground.

98. Sims was not fighting back, yelling at or otherwise threatening the Officers.

99.     The four OPD Officers presented overwhelming force such that Sims would not have been able to flee or otherwise threaten them.

100.     As no one else was in the immediate vicinity, there was no immediate risk to the four Officers or anyone else, and thus there was no need to use force at all.

101.     Young tased Sims twice for no justifiable reason and without warning.

102.     The right of a nonviolent misdemeanant to be free from a forceful takedown and excessive force is clearly established in the Tenth Circuit: "It is … clearly established law in the Tenth Circuit that the use of disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016).

103.     Although Tasers may not constitute deadly force, "their use unquestionably 'seizes' the victim in an abrupt and violent manner." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010).

104.     It is clearly established that "use of a taser without adequate warning on a nonviolent misdemeanant who is not actively resisting is unreasonable." *Emmett v. Armstrong*, 973 F.3d 1127, 1138 (10th Cir. 2020).

105.     As a result of Defendants' outrageous and illegal beating and tasing of Sims, he has been seriously injured and damaged as set forth herein.

106.     Sims is entitled to attorney fees under 42 U.S.C. §1988.

## SECOND CAUSE OF ACTION

### ~ *Failure to Intervene* ~

**Against Officers Young and John Does 1 - 3 in their Individual Capacities**

**Cognizable under 43 U.S.C. §1983**

**107.**    Plaintiff incorporates by reference all other paragraphs herein.

**108.**    Officers Young and Doe Officers 1 - 3 all used excessive force in the seizure of Shawn Sims.

**109.**    When Doe Officer 1 and 2 began to unreasonably and violently beat Sims' face, head and back, the other two Officers allowed this excessive force to continue.

**110.**    The names of the two Doe Officers who unreasonably beat Sims are unknown at this time. When Plaintiff discovers the names of the two Doe Officers, this Complaint will be amended to specifically identify them.

**111.**    Similarly, the names of the two Officers who did not attack Sims are unknown at this time. Once they are known, this Complaint will be amended accordingly.

**112.**    The other two Officers failed to intervene to stop the unreasonable and violent attack on Sims.

**113.**    When Young twice tased Sims, without justification and without warning, the other three Officers did not intervene to stop the unreasonable and violent use of force.

**114.**    "[E]ven if a single deputy's use of force was not excessive, a law enforcement official who fails to intervene to prevent another law enforcement official's use

of excessive force may be liable under §1983." *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014).

115.    "[E]ven if one of the defendant deputies did not use excessive force, a reasonable jury could nonetheless find … that he or she violated [plaintiff's] clearly established rights by not taking steps to prevent other deputies' excessive force." *Id.*

116.    Sims has been damaged as set forth herein and is entitled to attorney fees.

## THIRD CAUSE OF ACTION

### *~ Unlawful or Deficient Policies, Procedures and/or Protocols ~*

### *Against Ogden City, through OPD, Relating to Defective Policies, Customs or Practices Cognizable Under 42 U.S.C. §1983*

117.    Plaintiff incorporates by reference all other paragraphs herein.

118.    The Ogden City Police Department (OPD) is an authorized department or division of Ogden City. Ogden City is therefore responsible for the actions of OPD Officers.

119.    On April 22, 2023, as described above, OPD Officers wrongfully and unreasonably attacked and tased Sims in an effort to detain him.

120.    At all relevant times herein, Ogden City was the employer, operator, and/or administrator of the OPD.

121.    Ogden City, through OPD, had a duty to create, adopt, and promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols on the legal and safe detention of individuals.

122.    Ogden City, through OPD, knowingly and recklessly failed to create, adopt, promulgate, implement, enforce, revise, and/or update lawful policies, procedures, and/or protocols regarding use of force tactics in the detention and arrest of suspects, like Sims, specifically regarding when such tactics and procedures are permitted by law.

123.    Ogden City, through OPD failed to create, adopt, promulgate, implement, enforce, revise and/or update lawful policies, procedures and/or protocols pertaining to the proper arrest and safe detention of individuals, like Sims.

124.    These policies, procedures and/or protocols include restrictions against unreasonable physical attacks on a subdued and compliant detainee who is not resisting.

125.    These policies, procedures and/or protocols include restrictions against unreasonable use of a taser on a subdued and compliant detainee who is not resisting.

126.    OPD has a pattern and practice of not enforcing its restrictions against unreasonable physical attacks or taser use by its officers.

127.    By not enforcing its policies, procedures and/or protocols, Ogden City, through its OPD, condones the behavior of its Officers when they unreasonably attack and/or tase subdued, compliant, detained individuals, like Sims, without discipline or punishment.

128.    The failure to enforce such policies, procedures and/or protocols proximately allowed Officers to believe they could violently and unreasonably attack and tase Sims without repercussion or punishment.

129.    Ogden City's failures, as described above, were the proximate cause of the Officers' violent attacks against Sims, resulting in his serious injuries and loss of constitutional rights.

130.    The above-described actions and inactions of Ogden City, through the OPD, constitute willful and wanton misconduct and needless disregard to the rights, health, well-being, and safety of Utah citizens, particularly Sims. Such needless disregard warrants the imposition of punitive damages.

131.    The above-described actions or inactions of Ogden City, through the OPD, constitute deliberate indifference to the actions of its Officers and the damage that the Officers caused to Sims.

132.    Plaintiff has been damaged as set forth herein.

133.    Plaintiff demands judgment against Ogden City for compensatory damages, punitive damages, costs and attorney fees, and for such other relief as this Court deems just and proper, and as may be allowed by law.

## FOURTH CAUSE OF ACTION

### ~ *Failure to Train and/or Supervise* ~

### *Against Ogden City, through OPD, in its Official Capacity*

### *Cognizable under 42 U.S.C. §1983*

134.    Plaintiff incorporates by reference all other paragraphs herein.

135.    The actions of Defendants toward Sims were pursuant to, and consistent with, established policies, practices, and/or customs of Defendant Ogden City, through the OPD, for which Ogden City is responsible.

136.    OPD had a practice, policy, or custom of condoning the use of excessive physical force during detention and arrest of subjects without providing proper training and/or supervision regarding the reasonable and appropriate use of force in situations such as Defendants faced with Sims.

137.    The actions of Defendants in unreasonably attacking and tasing Sims show a lack of training in safely detaining individuals without resorting to unreasonable and illegal physical attacks.

138.    Because of the lack of training and supervision, Defendants unreasonably and improperly attacked Sims, tased him twice, without warning, and used unreasonable and excessive force to detain him, directly resulting in injuries and other damages described herein.

139.     The failure of Ogden City, through the OPD, to properly train and supervise Defendant Officers resulted in their illegal and reckless attacks on Sims and the tasing, without warning, while he was subdued and compliant.

140.     The failure to train and supervise Defendants caused their unreasonable and reckless conduct which resulted in injuries to Sims.

141.     Defendant Ogden City, through the OPD, was deliberately indifferent to the rights of persons with whom their Officers come into contact when it did not properly train and supervise the Officers.

142.     In the past ten years, Ogden City has been sued previously by other individuals who have been unreasonably and recklessly attacked by its OPD Officers.

143.     The deliberate indifference of Ogden City, through its OPD, was the proximate cause of Sims' injuries and damages, as well as his pain and suffering.

### FIFTH CAUSE OF ACTION

*~ **Municipal Liability** ~*

***Against Ogden City through its OPD***

***Cognizable under 42 U.S.C. §1983***

144.     Plaintiff incorporates by reference all other paragraphs herein.

145.     The actions of the Defendant Officers toward Sims demonstrated a pattern and policy that condones such excessive physical attacks and use of tasers on a detainee even when he is attempting to comply with orders.

146.     The widespread condoning of physical attacks on detainees by OPD amounts to a widespread practice that, although allegedly not authorized by OPD, has become a permanent and well settled custom or usage within the OPD.

147.     It was this widespread OPD practice and custom of brutality that made it permissible for the Officers to detain Sims in such a brutal and violent manner.

148.     The violent treatment of Sims by the Officers, including their excessive physical attacks on Sims and deployment of a taser striking him two times was the direct cause of Sims injuries.

149.     Ogden City, through its OPD, has demonstrated a pattern of conduct of physical brutality to detainees, similar to the Officers' treatment of Sims, which demonstrates OPD's deliberate indifference to the known or obvious consequences of its pattern and practice in illegally and unreasonably attacking and tasing detainees.

150.     The deliberate indifference of Ogden City, through its OPD, was the proximate cause of Sims' injuries and damages, as well as his pain and suffering.

151.     In the past ten years, Ogden City has been sued multiple times as a result of their pattern and practice of physically attacking and/or tasing detainees without justification and without warning.

152.     Because of Ogden City's actions, Plaintiff has been damaged as described herein.

## SIXTH CAUSE OF ACTION

### ~ *State Constitutional Claims* ~

(Informational Only)

***Against Officers Young and John Does 1-3 in their Individual Capacities***

***Cognizable under Article I, Sections 7 and 9 of the Utah Constitution***

153.    Plaintiff incorporates by reference all other paragraphs herein.

154.    Article I of the Utah Constitution, similar to the U.S. Constitution, provides protection of basic rights for its citizens, as follows:

   **a.**    Against denial of due process – Section 7
   **b.**    Against excessive force and unnecessary rigor – Section 9

155.    Officers Young and John Does 1 – 3 flagrantly violated the Utah Constitutional rights of Shawn Sims when they used excessive force on a detained person by attacking and beating him in the face and head and twice applying a taser to his torso without reason or justification.

156.    Defendants flagrantly violated the Utah Constitutional rights of Shawn Sims by denying him due process.

157.    The Utah Constitution Article I, Section 9 states "Persons arrested or imprisoned shall not be treated with unnecessary rigor."

158.    Defendants flagrantly violated the Utah Constitutional rights of Sims by subjecting him to unnecessary rigor as an arrested person.

159.    The Utah Supreme Court has clarified the "unnecessary rigor" clause of Article 1 §9 of the Utah Constitution as follows:

> The unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that ***demand more of the prisoner than society is entitled to require. The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of the confinement***.

*Dexter v. Bosko,* 2008 UT 29, ¶17, 184 P.3d 592, 596 (emphasis added). The Court went on to say: "this may include ***being unnecessarily exposed to an increased risk of serious harm***." *Id.* at 597 (emphasis added). As the following paragraphs show, Sims was unnecessarily exposed to an increased risk of serious harm. He was not only exposed to that risk, but he suffered directly from it, resulting in his damages.

160.    The Utah Supreme Court has held:

> We have held that the last sentence [of Article I, Section 9] makes section 9 ***broader than its federal counterpart***. Article I, section 9 is also a self-executing provision that prohibits specific evils that can be remedied without implementing legislation.

*State v. Lafferty,* 2001 UT 19, ¶73, 20 P.3d 342, 365. (emphasis and bracketed text added).

161.    Upon detaining Sims, Defendants were keenly aware that he was fully subdued and immobilized.

162.    Defendants knew Sims, once he was fully subdued and detained, was not a threat or danger to themselves or anyone else.

163.    Pursuant to the unnecessary rigor clause of Article I, § 9 of the Utah Constitution, Defendants had a duty to ensure that Sims was not unnecessarily exposed to an increased risk of serious harm.

164.    Defendants breached this duty by knowingly and intentionally attacking and tasing Sims *while he was subdued and compliant,* and doing so in a manner that exposed him to serious harm.

165.    It is clearly established that attacking and tasing a subdued and compliant misdemeanant is a violation of constitutional rights.

166.    Defendants have long been aware that there are specific well-established protocols in Ogden City which are to be used to detain individuals safely.

167.    In this case, Defendants knowingly and willfully did not follow the established protocols to safely detain Sims.

168.    Because Defendants did not follow protocol in safely detaining Sims, they unnecessarily exposed him to a significantly higher risk of injury and accordingly "demand[ed] more of the prisoner than society is entitled to require." *Dexter,* at ¶17.

169.    Defendants' conduct exposed a detained Sims to harm, thus subjecting him to unnecessary rigor.

170.    Any reasonable official in the position of each Defendant would have understood that attacking and tasing the subdued and compliant Sims would expose him to an increased risk of harm, which occurred in this case.

171.    The Utah Supreme Court has held:

In contrast, to recover monetary damages for a violation of the Utah Constitution, a plaintiff must demonstrate that the provision violated by the defendant is self-executing and then must establish three elements: (1) the plaintiff suffered a flagrant violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries.

*Jensen ex rel. Jensen v. Cunningham,* 2011 UT 17, ¶48, 250 P.3d 465, 478.

172.    Sims suffered a flagrant violation of his rights under the Utah Constitution, Article I, § 9, when Defendants knowingly and willfully violated protocol in safely detaining individuals by attacking and tasing Sims.

173.    Defendants had no reasonable justification for attacking and beating Sims.

174.    Defendants had no reasonable justification for tasing Sims, without warning.

175.    There is no equitable relief that would adequately redress Sims' loss, nor are there existing remedies that would redress Sims' injuries.

176.    As a direct and proximate result of Defendants' recklessness in attacking Sims, he has suffered cracked ribs, a broken nose and jaw, and fractured orbital sockets, which may result in loss of sight.

177.    The Utah Constitution, Article I, Section 7 states "No person shall be deprived of life, liberty, or property without due process of law."

178.    Sims suffered a flagrant violation of his constitutional right not to be deprived of his liberty without due process when Defendants knowingly and willfully attacked him. Defendants' recklessness in attacking a subdued and compliant Sims resulted in his injuries.

179.    As a direct and proximate result of Defendants' flagrant violation, Sims was attacked for no justifiable reason.

180.    As a direct and proximate result of Defendants' flagrant violation, Sims was twice tased, without warning.

181.    No other remedy for Sims' unconstitutional injuries exists.

182.    Sims is entitled to damages and attorney fees as set forth herein.

183.    The conduct of Defendants warrants the imposition of punitive damages as may be allowed by law.

184.    Claims arising under the Utah State Constitution may be subject to Notice of Claim requirements. They are included in this complaint only for informational purposes until the statutory time requirements have expired. After that date the Complaint will be amended to include this claim.

## SEVENTH CAUSE OF ACTION

### ~ *Intentional and/or Willful Misconduct Under Utah State Law* ~

(Informational Only)

### *Against Officers Young and Doe Officers 1 - 3 in their Individual Capacities*

185.    Plaintiff incorporates by reference all other paragraphs herein.

186.    On April 22, 2023, as described above, Officers Young and Doe Officers 1 - 3 intentionally and/or willfully tackled, attacked and tased Sims.

187.    Generally, a governmental entity, its officers, and its employees are immune from suit, and immunity is not waived for injuries caused by the negligent act or omissions of an employee committed within the scope of employment. *See,* U.S.C.A §63G-7-201.

188.    The Utah Governmental Immunity Act does not apply to claims alleging willful misconduct. U.C.A. §63G-7-202(c)(i). "'Willful misconduct' means the ***intentional doing of a wrong act***, of the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." U.C.A. §63G-7-102(11) (emphasis added).

189.    The actions of the four OPD Officers on April 22, 2023, were "willful misconduct" because they were aware or reasonably should have been aware that intentionally attacking, beating, smashing a head into the pavement, and tasing a fully subdued and compliant detainee on hard pavement while on the ground, would "probably result in injury."

190.    The actions of the four OPD Officers on April 22, 2023, were also "the intentional doing of a wrongful act" and/or "the failure to act" where they were "aware that [their own] conduct will probably result in injury," by attacking a compliant Sims, and continuing to pummel him, smashing his head into the pavement, and tasing him while he was on the ground.

191.    The actions of two of the Officers was "willful misconduct" under §63G-7-102(11) because of their "wrongful failure to act" in not pulling the other two Officers off of Sims during the continuing attack.

192.    The actions of the two Officers was "willful misconduct" because after seeing the other two Officers intentionally and recklessly attack Sims, who they knew was being compliant, they intentionally joined in the "wrongful act" by not intervening knowing full well that failing to interfere would "probably result in injury" to Sims.

193.    "Personal injury" means an injury of any kind.

194.    Any reasonable officer in the same position as the two Officers who attacked Sims would have known they could not attack a compliant individual as they did.

195.    Any reasonable officer in the same position as the two Officers that did not attack Sims would have recognized that the actions of the other two Officers were wrong and would have at least attempted to stop them from continuing to attack Sims.

196.    Any reasonable officer in the same position as Officer Young would have known that using a taser under the circumstances without a warning was unjustified.

197.    Any reasonable officer in the same position as the three other Officers, who watched Young tase Sims, would have recognized that Young's actions were wrong and would have at least attempted to stop him.

198.    As a direct and proximate result of Defendants' intentional and/or willful misconduct, Sims was injured when he was attacked, beaten and tased for no reason.

199.    No other remedy for Sims' injuries exists.

200.    Sims is entitled to damages and attorney fees as set forth herein.

201.    The conduct of Defendants warrants the imposition of punitive damages as may be allowed by law.

202.    Claims arising under the Utah State Constitution may be subject to Notice of Claim requirements. They are included in this complaint only for informational purposes until the statutory time requirements have expired. After that date the Complaint will be amended to include this claim.

## INJURIES AND DAMAGES

203.    Plaintiff incorporates by reference all other paragraphs herein.

204.    Sims was exposed to unreasonable and unnecessary excessive force by Officers Young and Does 1 - 3 during the arrest and detention of April 22, 2023.

205.    As a result of their illegal use of force, Officers Young and Does 1 – 3 caused serious injuries to Sims including cracking his ribs, breaking his nose and jaw as well as fracturing his orbital sockets causing severe damage to his right eye.

206.    Sims has sustained general damages, including pain and suffering.

207.    Ogden City is also liable for the injuries and damages to Sims which were proximately caused by the actions of its employed Officers.

208.    We incorporate herein by reference all other paragraphs relating to damages.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## **REQUEST FOR RELIEF**

WHEREFORE, Sims demands judgment against Defendants as follows:

**1.**    For general compensatory damages in an amount to be determined at trial;

**2.**    For special damages, such as medical bills, as are shown at trial;

**3.**    For punitive damages against Defendant as may be allowed by law;

**4.**    For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

**5.**    For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. §1988; and

**6.**    For such other and further relief as the Court deems just and proper.

DATED this 8th day of May 2023.

**SYKES MCALLISTER LAW OFFICES, PLLC**

 */s/ Robert B. Sykes*
ROBERT B. SYKES
C. PETER SORENSEN
CHRISTINA D. ISOM
*Attorneys for Plaintiff*