## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **SHAWN SIMS,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**ZACHARY YOUNG, ERWIN MANRIQUEZ, JORDAN NIELSEN, and PEDRO OLIVAS, Ogden City Police Officers; and OGDEN CITY, by and through OGDEN CITY POLICE DEPARTMENT (OPD),**<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 1:23-cv-00053-DBB-JCB**<br><br>**District Judge David Barlow**<br><br>**Magistrate Judge Jared C. Bennett** |

District Judge David Barlow referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiff Shawn Sims's ("Mr. Sims") motion for attorney fees and costs.[2] The court has carefully reviewed the parties' written memoranda. Under DUCivR 7-1(g), the court concludes that oral argument is not necessary and, therefore, decides the motion on the written memoranda. Mr. Sims requests a total award of $56,471.35. Based upon the analysis set forth below, the court grants in part and denies in part Mr. Sims's motion and awards Mr. Sims attorney fees in the amount of $12,752.50 and costs in the amount of $496.35, for a total award of $13,248.85.

---

[1] ECF No. 25.

[2] ECF No. 13.

## BACKGROUND

Mr. Sims filed his complaint in this action on May 8, 2023, asserting causes of action against Defendants Zachary Young, an Ogden City police officer, John Doe Officers 1-3, and Ogden City by and through Ogden City Police Department ("OPD") (collectively, "Defendants") for violation of Mr. Sims's rights under the Fourth Amendment of the United States Constitution, the Civil Rights Act of 1871, and the Utah Constitution.[3] On July 11, 2023, Mr. Sims filed an amended complaint adding Ogden City police officers Erwin Manriquez, Jordan Nielsen, and Pedro Olivas as Defendants.[4]

The day after Mr. Sims filed his amended complaint, Defendants provided Mr. Sims with an offer of judgment under Fed. R. Civ. P. 68 with a provision for payment of "[f]ifteen [t]housand [d]ollars ($15,000) plus [Mr. Sims's] reasonable costs and attorney fees incurred in pursuing his claims against Defendants through the date of this offer."[5] Mr. Sims accepted Defendants' offer of judgment, and the court entered a judgment in the amount of $15,000.00, noting that "reasonable costs and attorney fees are also awarded, but the amount will be determined by the [c]ourt at a later time."[6] Consequently, Mr. Sims filed the instant motion requesting $24,945.00 in attorney and paralegal fees and $496.35 in costs.[7] As an act of discretion, Mr. Sims reduced this amount by $2,500.00, making the total amount requested for

---

[3] ECF No. 2.

[4] ECF No. 6.

[5] ECF No. 10-1.

[6] ECF No. 12 at 2.

[7] ECF No. 13 at 1.

51.5 hours of work on this case preceding the offer of judgment $22,941.35.[8] Mr. Sims also

requests an additional $33,530.00 for 94.1 hours of attorney and paralegal time related to the

instant motion for attorney fees.[9] In other words, the request for fees is more than the work

actually done in the underlying case. Accordingly, Mr. Sims requests a total fee and cost award

of $56,471.35.[10] However, Defendants lodge several complaints regarding the "reasonability" of

Mr. Sims's counsel's billable hours and argue that Mr. Sims should be entitled to only $7,500.00

in attorney fees.[11] Defendants do not oppose awarding Mr. Sims $402.00 in costs for the filing

fee to initiate this case, but dispute Mr. Sims's additional request for $94.35 in costs for

"records" and "billings."[12]

### ANALYSIS

Based upon the following analysis, the court concludes that Mr. Sims is entitled to an

award of: (I) attorney fees in the amount of $12,752.50; and (II) costs in the amount of $496.35.

Accordingly, the court grants in part and denies in part Mr. Sims's motion.

### I.    Attorney Fees

The Civil Rights Attorney's Fee Awards Act allows prevailing parties in civil rights cases,

including suits brought under 42 U.S.C. § 1983, to seek reimbursement for attorney fees so long

as those fees are reasonable.[13] A plaintiff must successfully prove two elements in seeking

---

[8] ECF No. 13 at 1.

[9] ECF No. 23 at 11-13.

[10] *Id.* at 13.

[11] ECF No. 16 at 5.

[12] *Id.* at 15.

[13] 42 U.S.C. § 1988(b).

reimbursement under § 1988(b): "(1) that [the plaintiff] was the 'prevailing party' in the proceeding; and (2) that [the plaintiff]'s fee request is 'reasonable.'"[14] Here, the parties do not dispute that Mr. Sims was the prevailing party. Thus, the court addresses only whether Mr. Sims has established that his fee request is reasonable.

To determine the reasonableness of a fee request, the court employs the "lodestar" method.[15] Under this method, the court must calculate the lodestar, by multiplying attorney hours "reasonably expended" by an attorney's "reasonable hourly rate."[16] "[T]he [claimant] bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[17] Accordingly, the court addresses Mr. Sims's claimed (A) hours and (B) hourly rates. After analyzing those two issues, the court (C) awards Mr. Sims attorney fees in the amount of $12,752.50.

A.  Hours

To assess the reasonableness of an attorney's claimed hours, the court considers: (1) whether the hours are supported by adequate billing records; (2) whether the attorney has exercised billing judgment; and (3) whether the hours expended on each task are reasonable.[18] The court addresses each of these issues below.

---

[14] *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[15] *Robinson*, 160 F.3d at 1281.

[16] *Hensley*, 461 U.S. at 433. Paralegal rates are calculated the same way. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) ("[T]he fees for attorneys, law clerks, and legal assistants are all determined in the same fashion: multiplying reasonable hours by reasonable rates to reach a 'lodestar' amount.").

[17] *Case*, 157 F.3d at 1249.

[18] *Id.* at 1250.

1.  <u>Billing Records</u>

In assessing billing records, "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[19] Along with his motion, Mr. Sims submitted the attorneys' time logs for this case[20] and a sworn declaration from his attorney, Robert B. Sykes ("Mr. Sykes"), detailing the hourly rates of Mr. Sykes as well as those of Mr. Sims's other attorneys, Peter Sorensen ("Mr. Sorensen") and Christina Isom ("Ms. Isom").[21] This declaration also includes hourly rates for paralegal Eric Jergensen ("Mr. Jergensen").[22] Upon review, the court has determined that Mr. Sims's counsel has submitted sufficiently detailed billing records.

2.  <u>Billing Judgment</u>

Next, the court must ensure that the party's counsel has "exercised billing judgment."[23] "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."[24]

---

[19] *Id.*

[20] ECF No. 13-2.

[21] ECF No. 13-3.

[22] *Id.*

[23] *Case*, 157 F.3d at 1250 (quotations and citations omitted).

[24] *Id.* (citations omitted).

Mr. Sims's counsel has generally exercised adequate billing judgment. Although some of the hours expended by Mr. Sims's counsel appear to be excessive, the court will address that issue below when considering the reasonableness of the claimed hours.

       3.   <u>Reasonableness of Hours</u>

Finally, the court "look[s] at the hours expended on each task to determine if they are reasonable."[25] The court "approach[es] this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients."[26] The court may reduce counsel's hours "if they include 'hours that were unnecessary, irrelevant[,] and duplicative.'"[27] "[T]he overriding consideration [is] whether the attorney's hours were 'necessary' under the circumstances."[28] In making the reasonableness determination, the court "considers the following factors: (1) 'the complexity of the case,' (2) 'the number of reasonable strategies pursued,' (3) 'the responses necessitated by the maneuvering of the other side,' and (4) 'the potential duplication of services.'"[29] Accordingly, the court addresses these four *Case* factors and concludes that some of Mr. Sims's counsel's claimed hours are not reasonable.

Turning to the first *Case* factor, this is not a complex case. It involves straightforward causes of action for violations under the United States Constitution and the Utah State Constitution that Mr. Sims's counsel deal with frequently in their practice. Considering the

---

[25] *Id.*

[26] *Robinson*, 160 F.3d at 1281 (quotations and citation omitted).

[27] *Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, No. 2:17-CV-00032-RJS, 2021 WL 254268, at *3 (D. Utah Jan. 26, 2021) (quoting *Case*, 157 F.3d at 1250).

[28] *Robinson*, 160 F.3d at 1281.

[29] *Utah Physicians*, 2021 WL 254268, at *3 (quoting *Case*, 157 F.3d at 1250).

second *Case* factor, Mr. Sims's counsel was not required to pursue a great number of strategies to resolve this case, given that OPD made an offer of judgment two months after the case was filed. Under the third *Case* factor, again, because the case was resolved in its infancy, Mr. Sims's counsel was not required to respond to maneuvering from OPD. Under the final *Case* factor, Mr. Sims's counsel expended some excessive and/or duplicative hours that the court discusses below.

In total, Mr. Sims's counsel claims 51.5 hours of work on this case preceding the offer of judgment.[30] Mr. Sims's counsel's time logs show that Mr. Sykes spent 24.9 hours on this case at $700.00 per hour for a total time value of $17,430.00; Mr. Sorenson spent 8.4 hours on this case at $400.00 per hour for a total time value of $3,360.00; Ms. Isom spent 5.7 hours on this case at $400.00 per hour for a total time value of $2,280.00; and Mr. Jergensen spent 12.5 hours on this case at $150.00 per hour for a total time value of $1,875.00. However, Defendants lodge several complaints regarding the "reasonability" of Mr. Sims's counsel's billable hours and request that the court reduce these hours. Each of Defendants' arguments is addressed in turn.

a. *Engaging Counsel*

Defendants first argue that the court should reduce Mr. Sims's counsel's hours related to counsel's initial meetings with Mr. Sims and his mother because these hours are duplicative and excessive. Specifically, Defendants state that: (1) Mr. Sykes overbilled at least 1.0 hour for driving to and from Clearfield, Utah to hand-deliver a retainer agreement to Mr. Sims's mother, (2) Mr. Sykes overbilled 3.2 hours for traveling to and from the Weber County Correctional Facility ("Weber County Jail") to visit Mr. Sims only to discover that they needed an appointment, and (3) Ms. Isom overbilled 3.0 hours for traveling with Mr. Sykes to the Weber

---

[30] ECF No. 13-2.

County Jail to another meeting with Mr. Sims because the presence of only one attorney was necessary.[31] Hence, Defendants request that Mr. Sims's counsel's time be reduced by 7.2 hours.

The United States Court of Appeals for the Tenth Circuit has "recognized the compensability of necessary travel time, though a trial court has discretion to apply a reduced hourly rate if the time is otherwise unproductive."[32] In accordance with this case law, the court exercises its discretion to reduce counsels' billed hours for travel that was fruitless. The court finds that Mr. Sykes's first visit to the Weber County Jail was not productive because Mr. Sykes was unable to meet with Mr. Sims. Therefore, the 3.2 hours spent traveling to the jail will be reduced. However, the court finds that the travel time for Mr. Sykes to hand-deliver the retainer agreement to Mr. Sims's mother is compensable because, although it might have been prudent for Mr. Sykes to email the agreement to Mr. Sims's mother or to deliver it to her or Mr. Sims during the subsequent trip to the Weber County Jail, this time was still productive.

Additionally, although courts should reduce time for truly duplicative work, "[t]ime spent by two attorneys on the same general task is not . . . per se duplicative."[33] For example, courts in this Circuit have held that it is not always unreasonable to have two attorneys bill for time spent at a deposition or hearing.[34] The reasonableness of this practice turns on whether a claimant can

---

[31] ECF No. 16 at 7-8.

[32] *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010) (citing *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990)).

[33] *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir. 1998) (alterations in original) (quotations and citation omitted).

[34] *See, e.g.*, *Nieto v. Kapoor*, No. CIV 96-1225 MV/JHG, 2001 WL 37125028, at *10 (D.N.M. June 12, 2001).

"justify the presence of more than one lawyer."[35] Here, Mr. Sims explains that Ms. Isom's involvement in the second visit to the Weber County Jail was necessary because she needed to hear from Mr. Sims directly in order to assist the firm in assessing potential civil rights violations.[36] The court finds that Ms. Isom's presence at this meeting was justified. Thus, the court reduces the entries related to engaging counsel by a total of 3.2 hours.

### b.   Drafting Complaint and Amended Complaint

Defendants' second contention is that the hours billed in connection with drafting and proofreading the complaint and drafting the amended complaint are unreasonable. This includes 6.6 hours for Mr. Sorensen to prepare the complaint, 5.4 hours for Mr. Sykes to proofread the complaint, and 3.5 hours for Mr. Jergensen to revise the complaint for a total of 15.5 hours.[37]

First, twelve hours devoted to drafting and proofreading the initial complaint is excessive and, therefore, not reasonable. Drafting the complaint did not involve novel or difficult questions of law. This is especially true given Mr. Sims's counsel's claimed expertise in civil rights litigation[38] and counsel's previous filings in this district of complaints alleging similar constitutional violations.[39] Mr. Sims argues that drafting the complaint required great attention to detail in order to withstand an anticipated motion to dismiss,[40] however, including sufficient

---

[35] *Kelley v. City of Albuquerque*, No. CIV. 03-507 JBACT, 2005 WL 3663515, at *7 (D.N.M. Oct. 24, 2005).

[36] ECF No. 16 at 9.

[37] ECF No. 13-2.

[38] ECF No. 23-1 at 7-9.

[39] *See, e.g.*, *Sivatia et al. v. Fox et al.*, No. 2:21-cv-00761-DBB-JCB, ECF No. 2.

[40] ECF No. 13 at 6.

facts in order to survive a motion to dismiss should always be top of mind for counsel[41] and, alone, does not justify the excessive hours spent. Mr. Sims also contends that significant research was required in preparation for drafting the complaint because OPD (1) did not provide the names of the involved Ogden City police officers, (2) originally disclosed body camera footage from only two of the four officers, and (3) did not provide relevant police reports.[42] Consequently, Mr. Sims's counsel devoted a significant amount of time to Government Records Access and Management Act ("GRAMA") requests in order to obtain this information.[43] However, the time logs related to *drafting* and *proofreading* the complaint contain no mention of drafting and sending GRAMA requests, and the pursuit of these requests appear elsewhere in the time logs.[44] Accordingly, the court finds that Mr. Sims has not provided adequate explanation for why it took 6.6 hours to draft the complaint and another 5.4 hours to revise and that these hours are excessive under the circumstances. Second, Mr. Sims also requests 3.5 hours to prepare his amended complaint, with the most substantive change being the addition of Ogden City police officers Erwin Manriquez, Jordan Nielsen, and Pedro Olivas as Defendants. The minimal changes from the initial complaint to the amended complaint do not warrant 3.5 hours of work.[45] Therefore, the court finds the 15.5 hours spent on the initial complaint and amended complaint

---

[41] On a motion to dismiss, the burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

[42] ECF No. 13 at 7.

[43] *Id.*

[44] ECF No. 13-2.

[45] *Compare* ECF No. 2, *with* ECF No. 6.

unreasonable and reduces the time by 50 percent for a total of 7.75 hours of effort on the complaint and amended complaint.

###### c.   Notice of Claim

Defendants' third contention is that Mr. Sims's counsel spent an unreasonable amount of time in connection with drafting a notice of claim.[46] This includes 3.0 hours by Mr. Jergensen preparing and reviewing the notice of claim and 1 hour Mr. Sorenson also spent on the notice of claim.[47] The court finds nothing excessive about these entries.

###### d.   Press Conference

Defendants' fourth contention is that the hours billed in connection with a press conference should not be recoverable.[48] The court agrees because "hours spent on the public relations aspect of [a] case, i.e., time spent by counsel communicating with the press and other news media" are non-compensable.[49] Accordingly, the court reduces Mr. Sims's counsel's time entries related to the press conference by 8.7 hours.

###### e.   Communication

Defendants' final contention is that Mr. Sims's counsel spent excessive and duplicative time drafting communications to Defendants' counsel. First, Defendants argue that 0.9 hours spent drafting and reviewing a single email to Defendants' counsel seeking the names of the involved Ogden City police officers is excessive.[50] This includes 0.5 hours spent by Mr.

---

[46] ECF No. 16 at 9.

[47] *Id.*

[48] *Id.*

[49] *Utah Int'l Inc. v. Dep't of Interior*, 643 F. Supp. 810, 831 n.41 (D. Utah 1986).

[50] ECF No. 16 at 10.

Sorensen drafting the letter, 0.4 hours by Mr. Jergensen, presumably reading the letter and drafting the three-line email to Defendants' counsel, and 0.1 hour by Ms. Isom reading the letter and email.[51] The court agrees that 0.9 hours to draft and review the letter and short email is excessive and Ms. Isom's additional review of that letter and email is duplicative.

Second, Defendants argue that 0.3 hours spent by Mr. Sorenson on "Correspondence with Heather White [("Ms. White") (Defendants' counsel)] re service" on May 26, 2023, is inaccurately described, as Mr. Sorenson was uninvolved with any correspondence with Defendants' counsel on that date and, further, emails on that date do not relate to service.[52] The court suspects Mr. Sorenson meant to list May 22, 2023, as the date of his correspondence with Ms. White.[53] The court will not reduce hours based on such a clerical error. Accordingly, the court reduces Mr. Sims's counsel's time entries by 0.9 hours.

### f.   Total Reduction of Hours for Work Preceding Offer of Judgment

After reviewing each of Defendants' arguments for reducing Mr. Sims's requested hours, the court concludes that Mr. Sims's counsel logged 20.55 excessive hours preceding the offer of judgment. Although Mr. Sims's counsel already reduced their billing by $2,500.00 as an act of discretion, the court declines to take this into account for its own reduction. After subtracting excessive hours from Mr. Sims's requested hours, the court ultimately finds that it must calculate the lodestar amount using reasonable hour totals of 16.4 hours for Mr. Sykes, 3.6 hours for Mr.

---

[51] *Id.*

[52] ECF No. 16-4.

[53] ECF No. 16-3.

Sorenson, 3.8 hours for Ms. Isom, and 7.05 hours for Mr. Jergensen.[54] The court will separately address Mr. Sims's additional fee request related to the instant motion.

### g. Fee Application

Mr. Sims requests an additional $33,530.00 for 94.1 hours of attorney and paralegal time related to the instant motion for attorney fees.[55] This request is excessive as 94.1 hours is nearly twice the amount of time Mr. Sims's counsel spent on this case preceding the offer of judgment. "A request for attorney's fees should not result in a second major litigation."[56] In fact, other Circuits have held that a court may choose to award no attorney's fees at all if a party submits a §1988 fee request that is "outrageously excessive."[57] Although the court does not make such a punitive ruling here, it will exercise its discretion to substantially reduce Mr. Sims's counsel's hours related to the instant motion to 7.75 hours—the number of hours the court determined was reasonable for Mr. Sims's counsel to spend on the complaint and amended complaint. The time expended in preparing this motion and reply cannot realistically exceed the amount of time that

---

[54] The court's reduction of Mr. Sims's counsel's hours is within its discretion to determine the reasonable number of hours for purposes of the lodestar calculation. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) ("[T]he district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a request for attorney's fees should not result in a second major litigation." (quotations and citations omitted)).

[55] ECF No. 23 at 11-13.

[56] *Hensley*, 461 U.S. at 437.

[57] *See Case*, 157 F.3d at 1250, 1254 (citing *Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258–60 (D.C. Cir. 1993); *Fair Housing Council v. Landow*, 999 F.2d 92, 96–97 (4th Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).

Mr. Sims's counsel spent drafting what he characterizes as a "detailed, fact-intensive complaint" and amended complaint.[58] Additionally, many of Mr. Sims's counsel's claimed hours associated with the reply brief relate to gathering and proofing declarations that should have been attached to Mr. Sim's motion in the first place.[59] Accordingly, the court reduces Mr. Sims's time entries related to establishing the amount of his attorney fee award to a total of 7.75 hours.[60]

    B.  <u>Hourly Rates</u>

      To calculate the lodestar amount, the court must set reasonable fee rates for Mr. Sims's attorneys. "'[R]easonable fees' under § 1988 are to be calculated according to the prevailing

---

[58] ECF No. 13 at 6.

[59] As discussed below, Mr. Sims bears the burden of producing "'satisfactory evidence—in addition to the attorney's own affidavits—that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation.'" *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In support of Mr. Sims's motion, Mr. Sykes submitted a declaration asserting that the requested rates are the prevailing rates for someone with Mr. Sims's counsel's respective experience and expertise. However, the motion did not include affidavits from other local practitioners supporting Mr. Sykes's assertions nor did it include any case law from the District of Utah finding these rates reasonable. After opposing counsel pointed out Mr. Sims's failure to carry his burden in their response to the motion, Mr. Sykes spent the majority of his additional claimed hours gathering, discussing, and proofing declarations from two practicing attorneys in the community and drafting a second declaration that sought to provide additional support for the reasonableness of the requested rates. Similarly, Mr. Jergensen devoted most of his claimed hours related to the fee application to revising these declarations. The court finds that Mr. Sims should have provided these declarations in his original fee application and then spent an inordinate amount of time attempting to cure this deficiency.

[60] Because roughly half the requested 94.1 hours are attributed to Mr. Sykes and the other half are attributed to Mr. Jergensen, 3.8 hours will be multiplied by Mr. Sykes's hourly rate and 3.8 hours will be multiplied by Mr. Jergensen's hourly rate when calculating the lodestar amount below. Thus, Mr. Sykes's total reduced hours are 20.2 (16.4 hours preceding offer of judgment and 3.8 hours related to fee application) and Mr. Jergensen's total reduced hours are 10.85 (7.05 hours preceding offer of judgment and 3.8 hours related to fee application).

market rates in the relevant community."[61] As with calculating reasonable hours, the burden is on

the claimant to establish reasonable hourly rates.[62] "To meet this burden, the claimant must . . .

'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested

rates are in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience[,] and reputation.'"[63] Mr. Sims argues that hourly rates

of $700.00 for Mr. Sykes and $400.00 for both Ms. Isom and Mr. Sorensen are reasonable for

civil rights attorneys of similar experience and expertise practicing in Salt Lake City, Utah. To

support these proposed rates, Mr. Sykes offers a declaration explaining these attorneys' typical

rates and background in practicing law.[64] Also, in his reply in support of his motion, Mr. Sims

submits a second declaration from Mr. Sykes providing additional support for the reasonability

of these rates[65] along with declarations from James W. McConkie ("Mr. McConkie") and Terry

Welch ("Mr. Welch"), practicing attorneys in the District of Utah.[66] Mr. McConkie does not

discuss the prevailing market rate or disclose his own rates handling civil rights cases, however,

he states generally that the $700.00 per hour for an attorney with Mr. Sykes's experience is a

reasonable billing rate.[67] Mr. Welch has practiced law for 33 years and charges $605.00 per

---

[61] *Blum*, 465 U.S. at 895.

[62] *Robinson*, 160 F.3d 1281.

[63] *Guides, Ltd.*, 295 F.3d at 1078 (quoting *Blum*, 464 U.S. at 895 n.11).

[64] ECF No. 13-3.

[65] ECF No. 23-1 at 5-9.

[66] ECF No. 23-3, ECF No. 23-4.

[67] ECF No. 23-3, ECF No. 23-4.

hour.[68] However, Mr. Welch specializes in intellectual property and commercial litigation, not civil rights litigation.[69] Furthermore, Mr. Sims has not cited any case law from the District of Utah finding $700.00 per hour reasonable for civil rights attorneys with comparable skills, experience, and reputation to Mr. Sykes.

Defendants challenge the reasonableness of the rates claimed by Mr. Sims's counsel and argue that Mr. Sims has failed to carry his burden of showing that the requested rates are in line with the prevailing market rate in Salt Lake City, Utah. To support this contention, Defendants submit declarations from Justin Toth ("Mr. Toth") and Ms. White, practicing civil rights attorneys in the District of Utah.[70] Mr. Toth has practiced law for 30 years and charges $425.00 per hour for work prosecuting civil rights cases.[71] This is less than two-thirds of Mr. Sykes's requested hourly rate, and only $25.00 more per hour than the requested rate for Ms. Isom and Mr. Sorensen, who have both practiced law for five years. Ms. White—counsel for Defendants in the instant case—has practiced law for 25 years and charges $275.00 per hour to litigate civil rights cases.[72] This is less than half of Mr. Sykes' requested rate and approximately one-third the rate requested for Mr. Isom and Mr. Sorensen.

The court agrees that the hourly rates of $700.00 for Mr. Sykes and $450.00 for Ms. Isom and Mr. Sorensen are excessive and that Mr. Sims has not provided sufficient evidence to support these rates. Rather than relying upon Mr. Sims's counsel's claimed rates, the court's "focus must

---

[68] ECF No. 23-4.

[69] ECF No. 23-4 at 2.

[70] ECF No. 16-5, ECF No. 16-6.

[71] ECF No. 16-5.

[72] ECF No. 16-6.

be on the 'prevailing market rate in the relevant community.'"[73] If the evidence of prevailing

market rates before the court is inadequate, the court may use its own knowledge to establish the

appropriate rate.[74] Because Mr. Sims's counsel fails to provide adequate evidence of the

prevailing market rate for civil rights attorneys of similar experience and expertise, the court

relies upon other factors, including its own knowledge, to approve rates of $450.00 per hour for

Mr. Sykes and $275.00 per hour for Mr. Sorenson and Ms. Isom. Other courts in this district have

previously found similar rates reasonable for civil rights attorneys.[75]

    C.  <u>Attorney Fee Award</u>

       Having determined Mr. Sims's counsel's reasonable hours and reasonable hourly rates,

the court calculates the lodestar to determine Mr. Sims's award of attorney fees, which is 20.2

hours multiplied by $450.00 per hour (Mr. Sykes) plus 7.4 hours multiplied by $275.00 per hour

(Ms. Isom and Mr. Sorenson) plus 10.85 hours multiplied by $150.00 (Mr. Jergensen). Thus, Mr.

---

[73] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)).

[74] *Id.*; *see also Case*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.").

[75] *See, e.g.*, *Stella v. Davis County*, No. 1:18-cv-00002-JNP, 2023 WL 5334427, at *9-10 (D. Utah Aug. 18, 2023) (approving rates of $400.00 for an attorney with five years' experience and $450.00 per hour for an attorney with over 38 years' experience) (*see* ECF Nos. 253-1 and 253-2 for counsel's experience); *Mglej v. Gardner*, No. 2:12-cv-00713-CW, 2022 WL 2065588, at *3 (D. Utah June 8, 2022) (approving rates in a range of $330-$425 per hour). Although this court has approved a rate of $400.00 for attorneys like Mr. Sorenson and Ms. Isom with five years' experience, the court is persuaded by Ms. White's declaration that she charges $275.00 per hour for her work in civil rights cases, although she has practiced law for 25 years. This rate is closer to the low end of the ranges approved in *Mglej*. Furthermore, the court approved a rate for Mr. Sykes that is about 35 percent of his requested rate and approving a rate of $275.00 for Mr. Sorenson and Ms. Isom is a similar reduction.

Sims's attorney fee award is $12,752.50. The court finds this award is "adequate to attract competent counsel to similar cases without producing a windfall for attorneys."[76]

## II.   Costs

Mr. Sims claims $496.35 in costs accrued related to this case. Defendants do not oppose awarding Mr. Sims $402.00 in costs for the filing fee, but dispute Mr. Sims's additional request for $94.35 in costs for "records" and "billings" due to Mr. Sims's failure to mention these costs in his motion.[77] Indeed, the motion indicates that the "only costs incurred were the cost of filing the complaint and four round-trips to Ogden," which counsel "is waiving."[78] In his reply, Mr. Sims states that the additional $94.35 in costs disputed by Defendants comprise costs to obtain Mr. Sims's records from the hospital where he was taken after his encounter with the OPD police officers.[79] Mr. Sims argues that obtaining these records was necessary to understand the extent of Mr. Sims's injuries and therefore these costs are reasonable.[80] The court agrees. Accordingly, the court awards Mr. Sims $496.35 in claimed costs.

---

[76] *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-CV-01019-PAB-BNB, 2013 WL 2295449, at *9 (D. Colo. May 24, 2013) (citing *Blum*, 465 U.S. at 893-94).

[77] ECF No. 16 at 15.

[78] ECF No. 13 at 11.

[79] ECF No. 23 at 12.

[80] *Id.*

## ORDER

Based upon the foregoing analysis, the court HEREBY ORDERS:

1.      Mr. Sims's motion for attorney fees and costs[81] is GRANTED IN PART and

        DENIED IN PART.

2.      Mr. Sims is entitled to an award of attorney fees in the amount of $12,752.50 and

        costs in the amount of $496.35, for a total award of $13,248.85.

IT IS SO ORDERED.

DATED this 21st day of November 2023.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[81] ECF No. 13.