Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| SHAWN SIMS,<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY YOUNG, ERWIN MANRIQUEZ, JORDAN NIELSEN, AND PEDRO OLIVAS, Ogden City Police Officers; OGDEN CITY, by and through OGDEN CITY POLICE DEPARTMENT (OPD),<br><br>Defendants. | **OBJECTIONS TO MAGISTRATE JUDGE ORDER ON AWARD OF ATTORNEY FEES ON CIVIL RIGHTS CASE**<br><br>Civil No. 1:23-CV-00053-DK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

On November 22, 2023, U.S. Magistrate Judge Jared C. Bennett declined to award reasonable attorney fees in a §1983 civil rights case. Exhibit 1, Doc. 27, "Memorandum Decision and Order." This Order was clearly erroneous and contrary to law under F.R.Civ.P. Rule 72(a). But it also represents a serious disincentive for lawyers to take modest value §1983 cases.

1

## STANDARD OF REVIEW

"Clearly erroneous" or contrary to law is the standard of review for a magistrate judge decision under Rule 72. A finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A trial judge must determine that a finding is unsupported by substantial critical evidence or is contrary to law to support this standard.

## STATEMENT OF FACTS

The following facts support these Objections.

1. **Background.** Shawn Sims was severely beaten by Ogden Police Department ("OPD") officers on April 22, 2023. He filed a complaint alleging excessive force on May 8, 2023. Exhibit 2, Doc. 2. The complaint comprised 208 paragraphs, with 73 separate factual allegations and seven (7) different causes of action, including: federal excessive force, failure to intervene, unlawful and deficient municipal policy, failure to train and supervise, municipal liability, state constitutional violations and intentional and/or willful misconduct under Utah State law. *Id.*

2. **Amended Complaint.** Sims amended his Complaint on July 10, 2023 to include the names of the four OPD officers and revise factual allegations. Doc. 6.

3. **Offer of Judgment.** OPD made a Rule 68 Offer of Judgment to Sims in the amount of $15,000 on July 12, 2023.

    **4.**     **Judgment Entered.** Sims accepted OPD's offer of judgment on July 26, 2023. Doc. 10. Judgment was entered against OPD on July 27, 2023. Doc. 12. Attorney fees were to be decided at a later time. *Id.*

    **5.**     **Offer of Judgment on Attorney Fees.** OPD made an Offer of Judgment on attorney fees in the amount of $10,000 on July 28, 2023.

    **6.**     **Motion for Attorney Fees.** Sims filed his motion for attorney fees on August 9, 2023 requesting an award of $22,941.35. Doc. 13.

    *7.*     **OPD Response & Reply.** OPD filed an extensive and complicated *overlength* response objecting to Sims' request and proposing fees of only $7,500. Docs. 14, 16. Sims replied and requested an additional award for time spent addressing his application for attorney fees. Doc. 23. The *total* revised request was $56,471.35. *Id.*

    **8.**     **Timely Objections.** Magistrate Judge Bennett entered his "Memorandum Decision and Order" on November 22, 2023. Doc. 27. Sims' Objections are timely as they are filed within 14 days after service.

## POINT I

### ~ *Importance of §1988 Fees in Modest Value Cases* ~

**IT IS IMPORTANT FOR THIS COURT TO AWARD REASONABLE §1988 ATTORNEY FEES IN MODEST VALUE CASES TO ENCOURAGE LAWYERS TO ACCEPT SUCH CASES.**

The United States Supreme Court and Tenth Circuit decisions have often reaffirmed the importance of awarding fair attorney fees in civil rights cases, particularly in modest value cases. Doc. 23, p. 3 (quoting *Phelps v. Hamilton*, 120 F.3d 1126, 1131

3

(10th Cir. 1997)). The instant case initially appeared to involve far more serious and permanent injuries. Doc. 2, ¶¶66-68. After a few months had passed, it appeared Sims had substantially healed from his injuries. Accordingly, he elected to accept the $15,000 Offer. Doc. 10. Recovery and healing made this a modest value civil rights case, even though the excessive force was outrageous. If courts do not award fair and just attorney fees in such cases, attorneys will not accept them. Doc. 23, p. 3.

## POINT II

### ~ *Unreasonable Reductions of Attorney Time* ~

**THE TRIAL COURT MADE UNREASONABLE AND UNWARRANTED REDUCTIONS OF ATTORNEY TIME THAT WERE CLEARLY ERRONEOUS AND CONTRARY TO LAW.**

The following factors demonstrate that the Magistrate Judge's reductions of attorney time were clearly erroneous and contrary to law:

1. **Disregarded Legitimate Hours to Draft Complaint.** The Magistrate reduced the number of hours to draft the original and Amended Complaint from 19 hours[1] to 7.75 hours, over a 50% reduction. Doc. 27, pp. 9-11. The Magistrate found that 19 hours devoted to drafting and proofreading the Complaint and Amended Complaint was "excessive and, therefore, not reasonable." *Id.*

---

[1] Sims reasonably requested 15.5 hours for drafting and proofing the original Complaint and 3.5 hours for drafting and proofing the Amended Complaint. Doc. 27, pp. 9-11. The Magistrate reduced the full 3.5 hours for the Amended Complaint and cut the 15.5 hours for the original Complaint by 50%.

This finding is clearly erroneous. This 28-page Complaint had 208 paragraphs of which about 73 were specific factual allegations that were unique to Sims' case. It required: **(a)** investigation to get accurate facts; **(b)** reviewing videotape of the excessive force; **(c)** interviewing Sims and his mother; and **(d)** carefully spelling out of what happened. Any detailed Complaint requires multiple drafts, each of which requires proofing and editing. This is prudent in any litigation, but is especially important in civil rights litigation which frequently sparks a defense Motion to Dismiss based on qualified immunity. The plaintiff must then rely on the pleaded facts, the accuracy of which are critical to prevailing on the MTD. *See*, Docs. 13, pp. 6-7; Doc. 23, pp. 7-8.

This Complaint also had seven (7) separate federal and state causes of action which had to be separately researched and applied to the facts. This required careful drafting and review by more than one individual. Further, the Amended Complaint added the names of the four officers. Doc. 6. It *also* made important modifications to the factual allegations to clarify OPD's civil rights violations. *Id.*

Civil rights cases are uniquely individualized. To withstand a Motion to Dismiss, the complaint must have *individualized*, carefully crafted factual allegations. Cutting hours back by more than 50% for complaint drafting and proofing, allowing only 7.75 hours, is unreasonable and clearly erroneous. It was arbitrary and bespeaks a firm conviction that a mistake has been made. *U.S. Gypsum*, 333 U.S. at 395.

**2.** **<u>Reduction for Engaging Counsel is Unreasonable.</u>** The Magistrate claimed "Mr. Sykes overbilled 3.2 hours" for "unproductive" time in traveling to the Weber

County Jail with Sims' mother to visit Mr. Sims. Doc. 27, p. 7. This was clearly erroneous. It was important to meet with Mr. Sims as soon as possible after the incident had occurred. An appointment had been set by Counsel's office, but the Jail did not acknowledge the appointment and refused to allow Mr. Sykes and Ms. Quintana to meet with Sims (ergo, "this was news to us"). Doc. 23, p. 6. Additionally, the Magistrate ignored that this was an important opportunity to discuss the matter face to face with Ms. Quintana. She had spoken to her son several times after the incident. Getting first-hand, face-to-face information regarding Sims and his background was crucial. There was nothing "unproductive" about these billed hours. *See*, Doc. 23, p. 6; Doc. 13, Exhibit 2, "Schedule of Fees."  Further, Marsha Quintana did not have a car at the time and could not easily come to Salt Lake City to meet with Counsel.

       It was clearly erroneous and unreasonable to consider this time unnecessary or "unproductive."

       **3.**    **<u>Press Conference was Reasonable</u>.** It was clearly erroneous to exclude 8.7 hours of counsel's time to arrange and conduct a press conference. The Magistrate recites a case regarding non-compensability of time spent on "public relations." Doc. 27, p. 11. This press conference was not "public relations." Counsel frequently holds press conferences on civil rights cases in a diligent effort to find witnesses because police departments are often unwilling, as was the case here, to provide information that would assist in further understanding the facts. Doc. 23, pp. 8-9. In this very case, a first cousin of one of the Defendants called counsel's office to report that he was personally aware of

6

examples of violent tendencies by his cousin. Doc. 23, p. 9. This particular press conference was therefore extremely important in getting additional facts regarding the case.

      4.    **<u>Reduction for Communication was Improper</u>.** It is a small matter, but the Magistrate reduced counsel's time by .9 hours for "duplicative" time spent on "communications." Doc. 27, p. 11-12. That is clearly erroneous because the multiple communication efforts were an attempt to get factual information from OPD. OPD was impeding the proper processes of GRAMA and other measures Sims had initiated in order to get *public information*. Doc. 23, p. 7-8. These communications with OPD's counsel were necessary. This reduction was clearly erroneous and should be overruled.

      5.    **<u>Sims' Discount was Ignored</u>.** Every law firm in every case typically has some element of duplication. This is typically handled by "billing discretion" reductions. In this case, counsel deducted $2,500 for duplications. Doc. 13, p. 8. This was ignored by the Magistrate, which was clearly erroneous.

      6.    **<u>Improper Fee Application Reduction</u>.** In order to pursue a fair fee, it was necessary to file a detailed fee application. Counsel requested 94.1 hours. Doc. 27, p. 13. This was rejected by the Magistrate as "excessive, as 94.1 hours is nearly twice the amount of time Sims' counsel spent on this case preceding the offer of judgment." *Id.* This ignores the complexity of having to file a fee application to justify the fee. The courts have ruled that time expended developing a fee application is compensable. Doc. 23, p. 11-12. The fee application hours also included an *additional* discount of $3,000. *See*, Point II, ¶5, *supra*. Ignoring these discounts was clearly erroneous.

Counsel admits the "application" billing hours are higher than the pre-Offer of Judgment hours because the case was settled early in the process. However, the Magistrate does not appear to take into consideration OPD's detailed, complicated and *overlength* objection to Sims' fees. Doc. 14. This required Sims to draft a detailed Reply.

The Magistrate cites no law that the hours billed in applying for and responding to objections to an attorney fee award *must be less than the hours billed* in the pre-settlement litigation. Nevertheless, the Court "exercised its discretion" to reduce Sims' fee application billing to a total of 7.75 hours. So instead of awarding 94.1 hours for this extensive and complicated fee application, the Magistrate awarded a mere 7.75 hours. This is clearly erroneous and contrary to law.

Mr. James McConkie, a prominent Utah civil rights attorney, declared that he had "personally reviewed the billing summaries for the SMLO attorneys" and "found them reasonable in the number of hours billed and in the amounts billed." Doc. 23, Exhibit 3, p. 5. McConkie's review *included* the hours billed for the attorney fee application. The reduction of hours for alleged "excessive" billing on the fee application is clearly erroneous.

# POINT III

### ~ *Reduction of Hourly Rates was Improper* ~

**THE MAGISTRATE'S REDUCTION OF HOURLY RATES WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW BECAUSE HE IMPROPERLY RELIED ON AFFIDAVITS OF DEFENSE COUNSEL AND A NON-CIVIL RIGHTS LAWYER.**

The reduction of hourly rates was clearly erroneous for these reasons:

1. **Reduction of Sykes' Hourly Rates.** Mr. Sykes bills at $700 an hour for civil rights cases and has billed that amount for the past 1 1/2 years. See, Doc. 13, p. 5; Doc. 13, Exhibit 3, "Sykes Declaration," p. 3; Doc. 23, pp. 9-11. The Magistrate reduced Sykes' hourly rate to $450/hour in reliance on "other factors, including its [the Court's] own knowledge." Doc. 27, p. 17. The Magistrate inexplicably declined to take into account that Mr. Sykes has nearly 50 years of experience, having been admitted to the Bar in 1974. He has litigated hundreds of civil rights cases and has tried many to a jury. He has a specialty in civil rights. As far as counsel knows, there are no other currently practicing plaintiff civil rights lawyers in Utah with this level of civil rights experience. It was clearly erroneous not to consider these facts.

Additionally, the Magistrate apparently disregarded crucial evidence about the prevailing rate and reasonableness of the $700/hour proffered by Mr. Sykes. The Magistrate did not correctly consider the Declarations of James McConkie and Terry Welch. Mr. McConkie is a well-known civil rights lawyer, recently retired, who practiced for over four decades doing civil rights law. He stated "***Based upon my experience*** in

litigating federal civil rights cases in the District of Utah … I believe that the rates charged … in this case are *fair and reasonable*." Doc. 23, Exhibit 3, p. 5 (emphasis added). "They are *usual and customary* for attorneys with the *education, skill and extensive experience* of Mr. Sykes." *Id.*

Mr. Welch has practiced about 33 years. He declared that his rate was $605/hour. Doc. 27, pp. 15-16. The Magistrate dismissed this number because Welch's specialty is "intellectual property and commercial litigation, not civil rights litigation." *Id.* However, there is no indication by the Magistrate that "intellectual property and commercial litigation" should be valued higher in society than civil rights under the U.S. Constitution. Sykes' rate of $700/hour is therefore supported not only by Sykes, but also by Welch and McConkie, and other substantial and credible evidence in the record. Rejecting this evidence was clearly erroneous.

    **2.** **Reliance on Justin Toth.** In reducing Sykes' hourly rate to $450/hour, the Magistrate relied on a Declaration from Justin Toth. Doc. 27, p. 16. Toth, who has practiced 20 years less than Sykes, claims that he charges $425/hour for work prosecuting civil rights cases. *Id.* However, Toth is primarily a business lawyer who does not purport to specialize or do much work in civil rights. Toth's Firm bio, as of November 28, 2023, touts that he has "represented a wide variety of businesses and individuals, including direct sellers and distributors, manufacturers of automobiles and recreational equipment, and engaged in everything from software design to *civil rights litigation*." Exhibit 3, "Bio of Justin Toth," p. 2 (emphasis added). Other than this <u>one</u> off-hand

10

reference, there is no other mention of civil rights clients, cases or experience. Almost 100% of Toth's practice appears to be for the defense of large companies in non-contingent business litigation. He is a business lawyer. It is doubtful that any of his clients are unable to pay his hourly rates.

There is no indication in either Toth's Declaration or his bio of anything that would make his hourly rate relevant to this case. It was clearly erroneous for the Magistrate to rely on this Declaration.

3. **Mr. Sorensen and Ms. Isom.** The Magistrate criticized the $400/hour rates requested by Mr. Sorensen and Ms. Isom. Doc. 27, p. 16. The Magistrate appears to rely on defense counsel Heather White's hourly rate of $275/hour, with 25 years experience in *defending* civil rights cases. *Id*. The Magistrate observes Ms. White's rate "is less than half of Mr. Sykes' requested rate and approximately one third [sic – probably meant "two thirds"] of the requested rate for Mr. Sorensen and Ms. Isom." Doc. 27, p. 16.

Case law states that White's rate as a civil rights defense attorney is totally irrelevant to the prevailing rate discussion because she "represents a government entity." Doc. 23, pp. 10-11. The Magistrate should not have taken her rates into consideration or been "persuaded" by them. Doc. 27, p. 17. Reliance on White's rate was contrary to law. Defense counsel in civil rights cases, like Ms. White, normally work for municipalities that will always pay their bills and give repeat business. This is different from a plaintiff's civil rights attorney who often takes modest value cases on a contingent fee basis, usually self-funding the costs, in order to protect the civil rights of ordinary citizens.

11

Both Sykes and McConkie, experienced civil rights lawyers, state that Sorensen and Isom are qualified lawyers and that their requested $400/hour rate is reasonable. It was clearly erroneous not to approve this rate.

## POINT IV

### ~ *$700 an Hour is Reasonable* ~

**THE FACTS AND THE LAW SUGGEST THAT A REASONABLE HOURLY RATE FOR SYKES IS $700 AN HOUR. IT WAS CLEARLY ERRONEOUS TO DENY THIS RATE.**

In reducing Sykes' rate to $450 an hour, the Magistrate cites and applies a 2023 District Court case, *Stella v. County,* 2023 WL 5334427, *9-10, (D. Utah 2023); Doc. 27, p. 17, fn 75. That case involved a jail death that was litigated and tried. In that case, plaintiff's counsel filed an affidavit of Mr. Colin King, an experienced Utah civil rights lawyer, who stated that an "appropriate and reasonable billing rate" would be between **$450 and $550** per hour for an attorney with 38 years' experience in that case. *Stella*, at ECF 253-4, p. 3; *see also* Exhibit 3, attached hereto. That rate will vary "based on the ***level of attorney experience***, the risk of the case … and the expected nature of litigation." *Id.* (emphasis added). The *Stella* attorney with 38 years of experience *requested only $450/hour*. The Magistrate omitted King's range and "experience" language in his Order, stating only that the "approved rate was $450.00 per hour for an attorney with over 38 years of experience." Doc. 27:17, fn 75. This ignored the upper range of $550 which, as King declared, would be reasonable for an attorney with greater experience.

12

Mr. McConkie's Declaration that $700 was an appropriate and reasonable rate for someone with Sykes' level of experience is supported by King's affidavit. Sykes has 50 years of experience as opposed to the 38 years of *Stella's* counsel. Applying a *mathematical ratio calculation* to these facts provides an approximate hourly range for someone with 50 years of experience:

Based on a **$550** per hour rate, the calculation yields:

$$\frac{38 \text{ years}}{50 \text{ years}} = \frac{\$550 \text{ per hour}}{x}; \quad \text{then}, 38x = \$27,500; \quad \text{So}, x = \boldsymbol{\$723.68/hour}$$

Based on a **$450** per hour rate, the calculation yields:

$$\frac{38 \text{ years}}{50 \text{ years}} = \frac{\$450 \text{ per hour}}{x}; \quad \text{then}, 38x = \$22,500; \quad \text{So}, x = \boldsymbol{\$592.11/hour}$$

In other words, using King's declared range to compare rates ***and experience***, an appropriate and reasonable hourly rate range for Sykes, with 12 years more experience, would be between $592 and $724 an hour. This analysis makes sense because, as with many occupations, seniority brings additional knowledge and skill which justifies a higher rate for an attorney with greater experience. The Magistrate's ruling ignores these facts, which was clearly erroneous and contrary to law. It is also worthy to note that this same ratio calculation applied to Toth's hourly rate yields a $708/hour for Toth at 50 years. Doc. 23, p. 10, fn 1.

## CONCLUSION

The Magistrate Judge unreasonably reduced both the billed hours and the billing rate in a method and manner that was clearly erroneous and contrary to law. The Court should reverse the Magistrate's Order and uphold Sims' requested hours and rates as proffered by Sykes, Sorensen and Isom. This result is very important for modest value civil rights cases in Utah to assure that lawyers are willing to take the significant risk of representing those whose civil rights have been violated.

DATED this 1st day of December, 2023.

SYKES MCALLISTER LAW OFFICES, PLLC

 /s/ Robert B. Sykes
ROBERT B. SYKES
C. PETER SORENSEN
CHRISTINA D. ISOM
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Plaintiff certifies that the "Objection to Magistrate Order on Award of Attorney Fees on Civil Rights Case" complies with the requirements of D.U.Civ.R. Rule 7-1(a)(4)(D). It contains **3,030** words in 13 pt. font typeface and comprises 16 pages.

SYKES MCALLISTER LAW OFFICES, PLLC

 */s/ Robert B. Sykes*
ROBERT B. SYKES
*Attorney for Plaintiffs*